UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | CHAPTER 13 |
| MARC F. STEIN AND JILL S. STEIN, | : | |
| DEBTORS. | : | BANKRUPTCY NO. 11-10283-MDC |
| | | |
| MILESTONE CONSTRUCTION MANAGEMENT, INC., | : | |
| PLAINTIFF, | : | |
| v. | : | ADVERSARY NO. 11-00469-MDC |
| MARC F. STEIN AND JILL S. STEIN, | : | |
| DEFENDANTS. | : | |

# **MEMORANDUM**

**AND NOW**, this matter was initiated by Milestone Construction Management, Inc. (the "Plaintiff" or "Milestone") by the filing a complaint objecting pursuant to 11 U.S.C. §§523(a)(2)(A), 523(a)(2)(B) and 1328(a)(2) to the discharge of certain debts (the "Complaint") owed to it by Marc F. Stein ("Marc Stein") and Jill S. Stein ("Jill Stein," and together with Marc Stein, the "Debtors");

**AND**, this Court having jurisdiction to consider the relief requested therein in accordance with 28 U.S.C. §§157(b)(2)(I) and 1334;

**AND**, upon the appearance of all interested parties at a trial before this Court held on June 18, 19, and 22, 2012 (the "Trial");

**AND**, upon consideration of the testimony of the Debtors, Rocco Cavallo, President of Milestone ("Cavallo"), Ryan Roberts, a shareholder of MF Stein Corporation ("Roberts"), John

Capponi, a shareholder of Milestone ("Capponi"), and William Murphey, partner of Marc Stein ("Murphey");

**AND**, upon the record of the Trial, and all other pleadings and proceedings in this case;

**AND**, after due deliberation and sufficient cause;

**IT IS HEREBY FOUND AND DETERMINED THAT**:[1]

## I.     FINDINGS OF FACT

1. On January 18, 2011, the Debtors filed their petition requesting chapter 13 relief initiating their bankruptcy case.

2. On February 2, 2011, Milestone filed a proof of claim in the Debtors' bankruptcy case asserting a claim in the amount of $228,975, with continuing interest of $60 per diem, for the unpaid principal, interest, late charges, and fees (the "Claim"). On June 15, 2011, Milestone initiated this adversary proceeding to obtain pursuant to 11 U.S.C. §§523(a)(2)(A) & (B)[2] and 1328(a)(2) a determination of the dischargeability of the Claim.

### A.     The Subcontract and Agreements

3. Marc Stein was a majority shareholder of MF Stein Corporation ("MF Stein"), an apparently defunct corporation. MF Stein fabricated and erected various steel products. Marc Stein oversaw MF Stein's business operations.

4. At the request of Marc Stein, Roberts became a minority shareholder of MF Stein as of September 30, 2005, with a cash investment of $485,000. Prior to his investment, Roberts was a long-time employee of MF Stein and responsible for MF Stein's field operations.

---

[1] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

[2] At the Trial, Milestone presented no evidence with regard to its §523(a)(2)(B) claim. Namely, Milestone produced no evidence showing that the Debtors issued a statement in writing relating to the Debtors' financial condition that induced Milestone to make the Advances. On this basis, this Court will deem Milestone to have abandoned the second count of the Complaint and will not further consider it.

5.  Jill Stein was a part-time officer manager for MF Stein and was responsible for correspondence, preparation of checks, and payments to suppliers. In exchange, she was paid a salary and provided a motor vehicle for which MF Stein paid $1,114.17 monthly.

6.  In 2005 Milestone was awarded a contract ("PPA Contract") by the Philadelphia Parking Authority ("PPA") to repair the parking lots at Terminals A through F at the Philadelphia International Airport (the "PPA Project").

7.  Pursuant to an agreement dated July 22, 2005, Milestone hired MF Stein as a subcontractor to perform certain structural steel and metalwork for the PPA Project (the "PPA Subcontract").

8.  In December 2005, Marc Stein offered Milestone an opportunity to invest in 2945 L.L.C. a/k/a 900 Delaware Avenue ("2945 LLC"). 2945 LLC was the operating entity intended to develop Bridgman's View Tower Project, a proposed 60+-story building to be located at 2945 Poplar Street a/k/a 900 Delaware Avenue (the "Bridgman Project") and was owned by Marc Stein, Ryan Roberts, and William Murphey who each held equal 33 1/3% shares in the entity.

9.  After reviewing MF Stein's books and records and the status of its contracts, Milestone rejected the offer.

10. Marc Stein and Roberts believed that Milestone had treated MF Stein poorly and together with Jill Stein held numerous discussions about how they would "screw" Milestone.

11. On January 6, 2006, the Debtors purchased a second home at 236 Derby Avenue, Ventnor, New Jersey for $371,015.10 in cash (the "Second Home Purchase").

12. At or about the time of the Second Home Purchase, MF Stein allegedly began to experience financial difficulties and was unable to perform its obligations under the PPA

Subcontract. Thereafter, Marc Stein requested that Milestone provide MF Stein financial assistance to fund completion of the PPA Subcontract.

13. After extensive discussions Milestone agreed to provide MF Stein with advance payments in the amount of $417,000. In exchange, the Debtors, MF Stein, and Roberts issued the Promissory Note in Exchange for Advance Payments dated March 9, 2006, in the amount of $417,960 to MF Stein (the "Advance Note").

14. The Advance Note provides in relevant part that:

Marc F. Stein and Ryan Roberts hereby assign and transfer 10% of their combined economic interests to the Lender of the company known as 2945 L.L.C., aka 900 Delaware Avenue. Additionally, *Marc F. Stein and his spouse (Jill) ... both jointly and severely [sic], personally guarantee the completion of work at the Philadelphia Parking Authority Project ……, and the respective assignment of economic interests of their ownership of 2945 LLC to Lender or any entity Marc F. Stein or Ryan Roberts operate under at 900 Delaware Avenue.*

Plaintiff's Exhibit 13, p.1. (emphasis added)

15. The Advance Note further provides that "MF Stein agrees to not utilize any of the funds advanced to it for any other project other than the Philadelphia Parking Authority at the Philadelphia International Airport."

16. Milestone also agreed that it would issue joint checks to MF Stein and its suppliers of material for the PPA Subcontract. The agreement is evidenced by a Joint Check Agreement dated February 13, 2006 (the "Joint Check Agreement" and together with the Advance Note, the "Agreements").

17. Pursuant to the Agreements, Milestone advanced (1) $243,565 to MF Stein, the amounts it was to be paid in connection with the PPA Project (the "Direct Advance"); and (2) $55,000 to MF Stein in the form of joint checks paid to MF Stein and its subcontractors (the "Joint Check Advance," collectively with the Direct Advance, the "Advances").

4

18. Within weeks after receiving the Advances, MF Stein terminated its work on the PPA Project prior to its completion. Neither the Debtors nor Roberts completed the unperformed work and refused Milestone's request that Marc Stein or Roberts manage or oversee completion of the PPA Subcontract.

19. The Advances were not used for the PPA Project and were diverted to other purposes including, *inter alia*, to fund (1) MF Stein's work on the Bridgman Project, (2) the Debtors' personal salaries and expenses paid to them by MF Stein, and (3) the ordinary business expenses of MF Stein.

20. Milestone completed MF Stein's unperformed work, but did not complete the PPA Project within the time period required by PPA Contract. As a result, Milestone incurred $900,000 in costs, including liquidated damages of $450,000.

21. In January 2007, 900 Delaware Avenue, the location of the Bridgman Project, was sold to 2945 Poplar Development, LLC ("2945 Poplar"), a limited liability company in which Marc Stein held a four percent (4%) interest. Settlement Agreement, Paragraph 4. Marc Stein received $700,000 ("Delaware Avenue Sale Payment") in connection with the sale.[3]

22. Marc Stein deposited the Delaware Avenue Sale Payment in the operating account of S. Harrison Lee, LLC. The Debtors are the only members of S. Harrison Lee, LLC, a Pennsylvania limited liability company formed in early 2007.

23. Marc Stein testified that he received the $700,000 payment as compensation for work he did for Samschick in furtherance of the Bridgman Project. On other hand, William

---

[3] Marc Stein further testified that as a result of this transaction, he expects to receive a second payment in the amount of $500,000 and that this second payment remains due and owing. This Court notes that the Debtors' bankruptcy schedules do not reflect a future payment of $500,000. Rather, the Debtors' scheduled as an account receivable a contract between Marc Stein and Michael Samschick ("Samschick"), the prior owner of 900 Delaware Avenue, with the amount owed listed as "Indeterminate." This Court further notes that the Debtors' First Amended Chapter 13 Plan dated November 8, 2011 [Docket No. 82] omits any reference to the Debtors' interest in this future payment.

Murphey, a partner in 2945 LLC, testified that the $700,000 payment represented compensation owed to 2945 LLC for work performed in furtherance of the Bridgman Project.

### B. The District Court Litigation

24. On October 25, 2006, GKD-USA, Inc. ("GKD"), one of MF Stein's suppliers of materials for the PPA Project, filed an action in the United States District Court for the Eastern District of Pennsylvania against MF Stein and Milestone (the "District Court Litigation").

25. On December 1, 2006, Milestone filed in the District Court Litigation a third-party complaint against the Debtors, Ryan Roberts, and Nicole Roberts, asserting claims for indemnification and contribution, breach of warranty and breach of the Agreements.

26. The Debtors involvement with the District Court Litigation was terminated pursuant to a Settlement Agreement and Mutual Release dated January 28, 2008, executed between the Debtors and Milestone (the "Settlement Agreement").

27. The Settlement Note obligates the Debtors in their individual capacity to make the payment of $180,000 together with interest of 7% per annum to Milestone.

28. Pursuant to the Settlement Agreement, the Debtors executed in favor of Milestone a promissory note dated January 28, 2009, in the original principal amount of $180,000 that provided for the entire principal balance and all unpaid accrued interest to be paid on or before January 28, 2011 (the "Settlement Note").

29. Pursuant to the Settlement Agreement, Marc Stein assigned a ten percent (10%) economic interest in and of his ownership interest in 2945 Poplar to Capponi and Cavallo.

30. The Settlement Agreement released the Plaintiff's claims against the Debtors individually for their breach of the Agreements.

31. Milestone's Claim relates to the amounts now due pursuant to the Settlement Note.

## II. CONCLUSIONS OF LAW

32. To establish that the Claim is nondischargeable pursuant to §523(a)(2)(A), Milestone must establish by a preponderance of the evidence the following elements: (1) the Debtors made representations knowing they were false; (2) the Debtors made the representations with the intent and purpose of deceiving Milestone; (3) Milestone justifiably relied on the Debtors' false representations; and (4) Milestone suffered a loss or damage as a proximate consequence of the representation having been made. *Field v. Mans*, 516 U.S. 59, 61 (1995) (stating elements of a §523(a)(2)(A) claim).

33. To prove fraud or misrepresentation by a party to a contract, Milestone must establish that the Debtors entered into a contract with the intent of never complying with the contract's terms. *In re Antonious*, 358 B.R. 172 (Bankr. E.D. Pa. 2006) (*citing First Baptist Church v. Maurer (In re Maurer)*, 112 B.R. 710, 713 (Bankr. E.D. Pa. 1990)).

34. To determine whether the Claim is nondischargeable, this Court may look beyond the Settlement Agreement and Settlement Note to determine whether the underlying debt was incurred as a result of fraudulent conduct. *Archer v. Warner*, 538 U.S. 314, 316-17 (2005).

35. "It has long been the common law rule that signing a document authenticates and adopts the words it contains, even if there was a lack of subjective understanding of the words or their legal effect. In essence, people are presumed to be bound by what they sign." *In re WL Homes, LLC*, 452 B.R. 138, 147, n.4 (Bankr. D. Del. 2011) (*quoting In re Schwalb*, 347 B.R. 726, 743 (Bankr. D. Nev. 2006); *see also Corum Real Estate Group, Inc. v. Blackrock Realty*

*Advisors, Inc.*, Civ. No. 09-01680, 2010 WL 1957221, at *3 (D. Colo. May 14, 2010) ("it is axiomatic that a party agrees to the things contained in a written agreement that it signs.").

36. Both Marc Stein and Jill Stein knew at the time they executed the Agreements that they did not intend for MF Stein to complete the PPA Subcontract.

37. Both Marc Stein and Jill Stein knew that at the time they executed the Agreements the Advances would not be used to complete the PPA Subcontract.

38. Both Marc Stein and Jill Stein knew at the time they executed the Agreements that they intended to and would divert the Advances to other purposes.

39. On this basis, this Court finds that, at the time the Debtors executed the Agreements, the Debtors (1) misrepresented that they would complete the PPA Subcontract, and the Advances would be used by MF Stein to complete the PPA Subcontract, and (2) had no intention of fulfilling the terms of the Agreements at the time they entered into the Agreements.

40. The Debtors misrepresented their intent to complete the PPA Subcontract or have MF Stein use the Advances to fund the completion of the PPA Subcontract with the intent and purpose of deceiving Milestone.

41. By using the Advances to fund MF Stein's obligations other than those relating to the PPA Subcontract, the Debtors received benefits from the Advances.

42. Milestone justifiably relied on the Debtors' misrepresentation that they would complete the PPA Subcontract and MF Stein would use the Advances to fund the completion of the PPA Subcontract.

43. Milestone suffered a loss or damage as a proximate consequence of the Debtors' misrepresentations that they would complete the PPA Subcontract and the Advances would be used for the completion of the PPA Project.

8

44. The Court finds that Marc Stein's testimony regarding the $700,000 payment is not credible. The Court further finds that the $700,000 payment received by Marc Stein was intended as compensation for the work performed by 2945 LLC, and therefore should not have been deposited in the account of S. Harrison Lee, LLC.

45. The Court further finds that even if the $700,000 payment was not compensation for work performed by 2945 LLC, it was subject to the terms of the Advance Note as payment to an entity owned and operated by Marc Stein at 900 Delaware Avenue.

46. According to the terms of the Advance Note, this Court finds that Milestone was entitled to 10% of the $700,000 payment.

47. By diverting the $700,000 payment from 2945 LLC to S. Harrison Lee, LLC, this Court finds that the Debtors intended to prevent Milestone, among others, from obtaining its respective share of the $700,000 payment as provided by the terms of the Advance Note.

48. On this basis, this Court finds that, at the time the Debtors executed the Agreements, the Debtors misrepresented their intent to transfer any economic interest of 2945 LLC or any entity that Marc F. Stein operated under at the Bridgman Project and in fact had no intention of fulfilling the terms of the Agreements at the time they entered into the Agreements.

49. The $700,000 payment received by the Debtors and diverted to S. Harrison Lee, LLC constitutes a benefit received by the Debtors.

50. Milestone justifiably relied on the Debtors representation that they would provide a portion of Marc Stein's economic interest in 2945 LLC or any other entity operated under the Bridgman Project to Milestone.

51. Milestone suffered a loss or damage as a proximate consequence of the Debtors' representation that they would provide a portion of Marc Stein's economic interest in 2945 LLC or any other entity operated under the Bridgman Project to Milestone.

52. The Court finds that Milestone's Claim is exempt from the discharge of both Debtors pursuant to 11 U.S.C. §§523(a)(2)(A) and 1328(a)(2).

By the Court:

Dated: October 5, 2012

MAGDELINE D. COLEMAN
UNITED STATES BANKRUPTCY JUDGE